Good morning, please be seated. Madam Clerk, would you call our docket for this morning, please? The following cases are scheduled for argument this morning, Wednesday, September the 17th, 2025. Case number 24-2431 from the Eastern District of Missouri, Scott Kampas et al. v. City of St. Louis, Missouri et al. Case number 24-3084 from the Eastern District of Arkansas, Raymond Kelly v. Chad Pruitt et al. Case number 24-1482 from the Northern District of Iowa, Ryan Wolterman v. Sean Syverson et al. The last case for argument, case 24-2831 from Western Missouri, United States v. Alonzo Miller. The following case will be submitted on the briefs and record without oral argument today, Denver Foote v. Brandon Holton et al. The first case for argument, Scott Kampas et al. v. City of St. Louis, Missouri et al. Mr. Hoffman. Good morning, your honors. Counsel, may it please the court. I'm Stephen Hoffman for the plaintiff appellants. I want to acknowledge first that in addition to my role here as a lawyer for Mr. Kampas in this case, it's no secret that I'm also the other plaintiff to Mr. Kampas. I'll refer to myself as Mr. Hoffman, just as I'll refer to him as Mr. Kampas. This case arises from the district court's error in granting qualified immunity to the defendant officers, holding as a matter of law that it was not clearly established that plaintiff's arrests on October 3, 2017 violated the Fourth Amendment in the context of a mass arrest scenario. And so we urge this court to reverse and hold that Bernini v. City of St. Paul, decided by this circuit in 2012 and building on the reasoning of Carr v. District of Columbia from the D.C. Circuit in 2009, put defendant officers clearly on notice that their conduct in arresting plaintiffs here was unreasonable beyond doubt. And Bernini is the controlling precedent in this case, which clearly establishes that plaintiff's Bernini was decided, this circuit in Bowd v. Leshock in 2022 and Dunn v. John Doe's 1-22 reaffirmed Bernini and gives weight to the appellant's position here. Notably, the district... Those cases were decided after the events here though, right? The Bowd v. Leshock and Dunn v. Doe's, correct. And we're not saying that the district court wasn't aware of them because it couldn't have been, but we're saying that the reasoning there should be applied in this case. Well, the district court could have been aware of them, but they wouldn't have made it clearly established to a reasonable officer at the time of these events. Correct, because Bernini had already clearly established that. So how does Bernini clearly establish that? I thought Bernini kind of carved out an exception for mass arrests and certain situations where people were part of a unit, so to speak. So I would make a comparison to what Bernini was held to a Terry stop, an investigative stop. And in order for it to be a Terry stop, there can't just be a stop, there also has to be an investigation. And the holding in Bernini, as much of my argument today will concern, is that in order for officers to have qualified immunity, they have to have a sorting process where they determine which individuals committed an offense and which individuals didn't. You're saying Bernini has that holding? I'm saying that both Bernini and Broad v. Lashok and Dunn v. John Doe has that implicit in its holding and should be made explicit in this case. Well, but I thought we just established that those other cases were decided too late to be of much help to you here. Well, they're certainly help to showing how the analysis should be done in comparison. Well, that may be, but they wouldn't have put a reasonable officer on notice at that time, right? And that's what we have to do to determine whether it was clearly established. So let me explain why it would have put a reasonable officer on notice. We're not challenging the initial detention when the plaintiffs were surrounded by the police who wouldn't let them exit. We're challenging their subsequent arrest and continuing detention without cause. Here, after- Are you saying the police should have begun a sorting process at the location regardless of what the number of the officers were in relation to the number of the crowd and that they would have had to sort out and figure out who was in and who was not in the protest? Pardon me. I don't think that we have to determine in this case what the scope of the sorting process is, but this court should hold that there has to be a sorting process in a mass arrest as the line of cases has insisted. And so- Wait a minute. Wait, wait, wait. So I think we established Leshock and the Dole cases were later. Yes. So we're really talking about Bernini, right? Well, I'm talking about all three. Okay. What in Bernini says there has to be this sorting process, you suggest? Well, that's the reason why qualified immunity was granted. I mean, I don't have the case in front of me, but a close reading of the case talks about- Well, let me go through the cases. In Carr versus District of Columbia, there was a unit that existed during a riot. And the reason is that the court said why. There was a flyer distributed prior to the arrest march that said it would be an explosive protest. The organizers distributed bandanas and vinegar to use as makeshift gas masks. The group lit torches out of soup cans on poles filled with a flaming liquid. They pounded on buckets and chanted loudly and there was vandalism. Trash containers set on fire. In Bernini, the court found the existence of a unit where the group donned gas masks and facial coverings, quote, as though they were preparing for a confrontation with police. They waved flags, shouted profanities, and taunted officers. And a group used a shield made of two large signs and crossed the intersection of police. So the court found they were acting together and intended to break through the police holding. And in doing so, the court also cited as a where police had effectuated a mass arrest, they were not entitled to qualified immunity where the crowd didn't try to break through the police barrier. And the same in Boud. The circuit gave little credence to the city's claim that there was a unit stating in their opinion that the video evidence does not show any sense of urgency or confrontation visible in the crowd. In all of these cases, the court analyzed the sorting process that had been done and which was an important factor in determining that the officers could have qualified immunity because they had done that. And the district court erred in this case additionally in finding that there was a unit that existed on October 3rd for the reasons I just described. A unit is not just a group of people who are committing crimes. More is required. In this case... You're saying they didn't necessarily have to do checking of groupings if you're saying that there was no really cohesive group? Well, there was a cohesive group, but the question is whether that meets the definition of a unit as Bernini and these progeny cases have described it. Now, did the officers perceive that they were dealing with a cohesive group that had gone on to the interstate, blocked it, and then left en masse to a location off the interstate? None of that shows that this was a group, quote, primed for confrontation. And that's the element that's in all of these cases in the analysis is that the group is doing more than just violating a law, which in this case, as we briefed, would have been a municipal ordinance and not even a criminal or a municipal ordinance violation, not necessarily a criminal charge. Here, there's nothing comparable in what... I'm sorry. I need to return to that in a moment. But for the unit, it has to be these things beyond just a group violating the law. The district court held in this case that the October 3rd protesters undoubtedly acted as a 64 and said, based on these actions, a reasonable officer could have believed that the group had committed one more offenses under state law. But this is not the unit that existing case law identifies. Again, it has to be a group that is primed for confrontation with police. And here, the record shows that the scene was peaceful. It doesn't show that officers were outnumbered. It doesn't show that officers were threatened by anyone. To the contrary, it shows a peaceful group of people who sat down when the police ordered them to be arrested, who walked onto the highway. In this case, wasn't it trespassing? Wasn't that the arguable offense? I've extensively briefed... Where does violence come into play when the offense involved, the arguable offense, is trespassing? Isn't that two different things? There was no orders by police that evening. I've extensively briefed the fact that trespassing in Missouri requires either notice to the person verbally through a sign or the area has to be fenced for the person to walk there. That discussion... I thought in this case there was an occupation of actually an interstate highway. On and off ramps. The protesters certainly walked onto the highway and walked off the highway. As far as I'm aware, they didn't even stop. They just walked on and walked down the highway and walked off. But that isn't relevant to whether or not there was a unit. Just to clarify, I'm just asking, what is your reference to violence? How does that have any bearing when the arguable offense here is an offense like trespassing? The individuals who, under the standard in Bernina, the individuals who trespass on the highway, if they trespass, or who committed some other... I assume there's some violation that they did by going on the highway. They could have been arrested for each person where there was individualized arguable or probable cause to arrest them. But there can't be a unit unless that unit is primed for confrontation with police like in these other cases. Mr. Hoffman, this discussion of the unit, it seems to me, goes to the question of whether the initial arrest was okay. I thought I heard you say earlier that you're not really challenging the initial arrest. It was just the post-sorting question. Do I understand that correctly or not? No, and I apologize for not being clear. We certainly are challenging the arrest. We're not challenging the initial detention in which police could have done the sorting process and sought out whether or not Kampus and Hoffman had been on the highway. In fact... So wait a minute. Wouldn't the unit question be related to the initial detention? Whether or not there's a unit is... And whether you were part of that, you and your co-plaintiff were part of that unit. Well, it's related to the... So Bernina authorizes the police department to do some sort of brief detention, which by brief it could last a couple of hours like it did in these cases. Okay, just so I'm clear, you're not challenging that? We're not challenging the detention because we believe that in light of an emerging situation that the police are trying to decide who's been committed a crime and who hasn't, we think that they can briefly detain individuals to ascertain for the sole purpose of arresting the people who violated the laws and then determining which people for whom there's no probable cause to believe committed a crime and promptly releasing them, not taking them to the jail for 18 hours and letting them sit there. I want to... Counselor, I just want to notify you, you're within your rebuttal time. You can continue if you like or you can reserve it. I'd like to continue. The affidavits and depositions demonstrate that Kampus and Hoffman were actively attempting to distance themselves from the crowd and they waited until the crowd had moved away from them before they moved. Here, this court should decide that the district court erred as a matter of law in holding that a peaceful non-riotous group constituted a unit for qualified immunity purposes. There was this argument raised below, the argument that you're making to us. Was it raised at the district court? Yes. It was briefly raised when the district court sua sponte ordered further briefing on the summary judgment. I want to turn to the question of what the officers knew at the time. The record clearly shows that no person observed the plaintiffs violating any law before their arrests and no one told the defendant officers that they had observed the plaintiffs violating any law. They contend in their brief that the district court found that the defendants had probable cause or at least probable cause or at least arguable probable cause and that is not true. The district court declined to do the probable cause analysis and instead focused on arguable probable cause, ultimately finding that it was plaintiff's proximity to what the court called a unit that gave the officers probable cause. But here's a huge problem. The analysis has to be of what the officers knew at the time and that's Brown v. City of St. Louis. Here, the unconverted evidence is that no one saw Campus or Hoffman on the highway or any place in the scene until they were surrounded. The KMOV video, which is relied on by the district court, also suffers from a fatal flaw and this is important. It was produced by a third party as part of a subpoena request by the city and the city states in its brief that the officers had not seen this video on the scene. So it can tell us nothing at all about what was in the minds of the officers at the scene because they never saw it. There are numerous genuine disputes of material fact precluding an entry of summary judgment. The district court ignored the peacefulness of the scene. It ignored what was actually known to police at the time and instead substituted the KMOV video for that analysis. It's hotly disputed where the plaintiffs were in proximity to the protesters and the district court waved that away and said it was not material. The plaintiffs also introduced a lot of evidence that would be highly relevant to determining whether the officers could have reasonably believed that the plaintiffs were violating, for instance, the peace disturbance statute, which would require conduct calculated to provoke a breach of the peace. And there's no evidence that the plaintiffs did that at all. Thank you. Thank you, Mr. Hoffman. Mr. Hagan, or Ms. Hagan, excuse me. Good morning, your honors, and may it please the court. My name is Rachel Hagan and I am here representing the defendants in this matter. I'm going to start by agreeing with the appellants in this matter that Bernini is the controlling case, but I'm going to stop my agreement there. Plaintiff appellants' fatal flaw in their argument is that they confuse the facts with the law. I will briefly state that the other cases that the appellants cite to post-Bernini are not relevant to this matter because the district court decided this case for the Fourth Amendment claims on whether it was clearly established. And so in order to be clearly established, it must be the law of the time. So any subsequent cases are not relevant to the analysis of what was clearly established. Bernini is the controlling case and was the clearly established law at the time, but Bernini supports the district court's finding. Most of the arguments or all of the arguments the plaintiff raises in this matter that state Bernini should be controlling and that the district court incorrectly applied it is because the plaintiff is looking at the specific facts of Bernini and confusing those with the law that was decided in Bernini. The law decided in Bernini was extremely simple. Said the Fourth Amendment is satisfied if officers have grounds to believe all arrested persons were part of the unit observed violating the law. Plaintiffs mainly raised three contentions with this point. First, that there was no sorting process. Second, that it wasn't a unit because there was no writing behavior. And third, that no one actually saw them violating the law. None of those assertions are relevant in this matter. So I'll start with the sorting process. Nowhere in Bernini does the language state that a sorting process is part of the requirements for meeting probable cause in a mass arrest context. Again, it says the Fourth Amendment is satisfied if officers have grounds to believe all arrested persons were part of the unit observed violating the law. The court in Bernini had the officers in Bernini used a sorting process because that was relevant to the circumstances that were present. In Bernini, they witnessed a group of about 100, 160 people acting as a unit violating the law. By the time they had encircled the entire group, it was about 400 people. So nearly four times the size of the original group. Because the group was obviously so much larger than the group that they had observed violating the law, if the officers hadn't performed some sort of sorting technique, they would not have had grounds to believe that all arrested persons were part of the unit because they couldn't believe that a group four times the size of the original group was all the people who had been violating the law. Bernini did not require that officers always use a sorting technique in order to have Fourth Amendment protections through qualified immunity. If it did believe that, it would have stated so. In this case, a sorting requirement was not necessary because there was not the huge size discrepancy as there was in Bernini. Plaintiff also talked... They do allege though, don't they, that there was free entry and exit from the group, so to speak? That at least it seemed to be possible that the group would have changed sizes. I believe what you're referring to is the plaintiff's reliance on Bodie versus Lashok, where they found that people there who were arrested were found milling, freely entering and exiting the area and were milling about the intersection when they were arrested. Bodie versus Lashok is highly distinguishable from this case, and so appellant's reliance on that case is misplaced. In Bodie, there had been criminal acts that had taken place earlier in the day, and the encirclement hadn't happened immediately afterwards. People had gone about their business, and hours later, the group was seen... There was multiple people, not all of whom had been seen violating the law, who were coming and going from the area. They were freely entering and exiting. Those circumstances are vastly different than those here. In this situation, the protesters marched up onto Interstate 64 as a group. They continued down. They exited the Jefferson off-ramp, which is where they came upon Campus and Hoffman, and then they continued marching, including Campus and Hoffman, northbound on Jefferson Avenue. The officers encircled, and their surveillance was also being conducted on the officers as this was happening. Because it was sort of a contained situation, it wasn't hours later, and the group had been acting cohesively throughout the entire situation, and surveillance had been taking place, and no peripheral individuals were seen adding the group. This is a different situation than people who were freely entering and exiting the area, and the officers would have had no reason to believe that was necessary. Is there anything in any cases that indicate that when suspected individuals inform the police, as apparently happened here, that they were not a part of the group? That somehow gives the officers a reason to investigate and determine, at that point, in a type of sorting operation, whether those individuals were actually a part of it? No, Your Honor. Absolutely not. There's no such requirement. And the cases that the plaintiff cites are wholly distinguishable. And the cases that he cites were all situations where there was some sort of objective evidence that the officers became aware of that destroyed or dissipated their probable cause. There are not cases where a plaintiff has simply stated that they are innocent, and then that has dissipated probable cause. And that's what plaintiff appellants want you to believe, and that would do away with, it defies logic, and it defies the purpose of probable cause. If every officer could no longer be considered to be acting objectively reasonably, if he no longer had probable cause, because a person who was arrested said that they were innocent of the crime that they were arrested for, that would destroy the justice system as we know it. The cases that plaintiff cites, for example, include... There are cases that indicate there are circumstances that officers might be aware of that would warrant them to do some kind of investigation before taking someone into custody. Certainly, Your Honor. So one of the cases, the first case the plaintiff cites is Smith versus Roseboom out of the Eighth Circuit in a 2024 case. That was a Terry stop, and where they had information they were looking for shoplifters, a black man and a black woman. They also had a description of the car. They saw a car that matched the description. They pulled it over. The people inside were a black man and a white woman, and the court there found that because they were looking for a black man and a black woman, that seeing the individuals in the car were a black man and a white woman should have clearly dissipated the officer's probable cause, because that was objective evidence that the reliance, the facts that they had relied on for probable cause were not met in that case. Plaintiffs also assert that rioting or violent behavior is the requirement of a unit. And again, this is not a requirement out of Bernini. Those were the facts in Bernini. In Bernini, the charges that the appellants were arrested for was for rioting specifically. And so when the court was doing its analysis of whether the officers would have grounds to believe the unit was observed violating the law, the unit must have been observed violating the law in the way that they were charged with, which was for rioting. And so they considered things such as donning face masks, chanting, hiding behind a shield. In this case, the charge, as Judge Shepard stated, the charge is for trespass. There's no requirement in order for them to be observed violating the law via trespass that they must have been violent. And so that's simply not relevant. Well, a question I would have is didn't the district court here find that as a factual finding based on the record and construing the evidence and the like that it was required to do so, didn't the district court find that these plaintiffs in fact had not trespassed? Yes, that's correct. But the holding in Bernini provides exactly for this type of situation. Plaintiffs in Bernini had not actually been part of the group who was rioting. And so this is directly analogous. The requirement is not actually that the individual plaintiffs had been violating the law. It's whether the officers had qualified immunity for mass arrest when they observed, when they had grounds to believe that all arrested persons were part of the unit observed violating the law. So here the question is not whether plaintiff actually violated the law, in which case we wouldn't need probable cause. The question is whether officers, a reasonable officer, would have grounds to believe that they had violated the law. And here under the analysis used in Bernini, the officers did have that. And so what were the facts as found by the district court that provided that arguable probable cause? Because we know that in fact these plaintiffs were not on the interstate, they were not on the ramp, and they fell into the group later.  So yeah, so the district court decided that under Bernini that the officers must have had grounds. So the question is what those grounds were. In this case, as I said, unlike the cases that plaintiff cites too, which usually went on for hours and involved wide areas, this was a relatively contained protest in a relatively contained area. Here there was a specific group of protesters who together marched onto the interstate, were clearly observed there. Surveillance was being taken, and the group was being surveilled. And then they were marched off the highway, off the Jefferson off-ramp, and then encircled not far after. And so because the group had acted cohesively and had clearly and uncontrovertedly been seen violating the law, and because Kampus and Hoffman's proximity to the group was such that it would not have given officers rise to believe that they were peripheral individuals who had joined the group at a later date. For example, Mr. Hoffman can be seen on video at the tail end of the group with protesters behind, beside, in front of, and all around him. There was no reason for an objectively reasonable officer to be put on notice that these were peripheral individuals. And so it was reasonable under Bernini for them to assume that they were part of the group who had just been observed violating the law by marching on Interstate 64. Finally, plaintiff goes into arguing that no one actually saw them. But the requirement of Bernini is not that individuals be required to be seen violating the law. In fact, the exact opposite. As I stated previously, and I won't reiterate it too much, but the requirement in Bernini, the appellants in Bernini, were not individuals who had violated the law. And the court still found that it was objectively reasonable, still granted qualified immunity to the officers because the officers had grounds to believe that those individuals were part of the unit observed violating the law, just as the officers here also had grounds to believe that Kampus and Hoffman were part of the group. What were those grounds other than their proximity? Proximity is the main element here because for trespass, trespass is almost a proximity element. In order to trespass, the violation is being in a location where you're not supposed to be. So there's not many other elements for the district court to rely on here in determining what individuals did to be observed violating the law. Here they were clearly observed marching onto the highway and then marching off. Kampus and Hoffman were seen as part of the group and there was no reason to believe that they were peripheral. I'm not sure that I can, to be clear, I'm not sure that I can point you to other specific factors other than proximity. And I will note that plaintiffs argue that proximity is not enough. But the cases that plaintiff cites too in saying that proximity was not enough were never in a mass arrest context. And in cases where courts have decided it on grounds other than proximity, those have all been situations where the law, the underlying criminal violation required other elements such as actual affirmative behavior like writing or yelling, donning face masks, and those aren't present here in order for the court to analyze. So you, so really as I understand what you're saying is you're saying that the officers were mistaken that these plaintiffs were part of the trespassing group. That is not. But that mistake was an objectively reasonable one. That is true, your honor. And that's exactly the law that was applied in Bernini. So here it is uncontroverted. And we do not argue that plaintiffs did not go onto the highway. That's not an issue here. But that's similar to the facts in Bernini where the plaintiffs there similarly had not violated the law. The question is whether qualified immunity should be applied. And so there's two prongs. The court here decided it on the clearly established prong and found that under Bernini it was reasonable that the officers had grounds to believe that they were part of that unit who had been violating the law. But even if the court wanted to consider more than the clearly established prong, such as by getting into arguable probable cause, then yes, the similar, the holding in Bernini would similarly apply in that their presence within the group would give officers arguable probable cause even though they were mistaken to believe that they had violated the law. If there are no more questions. I see none. All right. Thank you. Mr. Hoffman, we used all your time. We'll give you a minute if you've heard something from the defense here. If you have a minute that you can use to respond, you can have it. Thank you, Your Honor. Those 15 plaintiffs in Bernini were sorted and released. That's why the officers had qualified immunity for them. The opposite of what happened here. I want to just briefly address this idea that because it's a mass arrest, suddenly all of these cases that say that officers have to investigate credible claims of innocence just disappear. Clear Fourth Amendment principles don't just dissolve because there's a mass arrest. That's totally counterintuitive. In fact, if the sorting process that we contend is necessary is necessary, it's even stronger here that that investigation takes place. I also want to point out that there was information I wasn't able to present today about the PowerPoint presentation that was shown to the civil disobedience team that associated legal observers with mob participants, psychotic individuals, etc. And the district court did not view that in the light most favorable to the plaintiffs. Instead, it viewed it in the light most favorable to the defendants. And similarly, with Officer Hawkins' testimony, could I just finish this one sentence? Well, counsel, I've given you the grace to respond to what was presented. You didn't present this in your opening. Oh, I apologize. So you're going back to your initial opening. I'll rest on my point about investigation not dissipating. Thank you. Thank you. The court wishes to thank both counsel for your participation and argument before the court. We'll continue to study the materials and render decisions as they're close. Thank you. Counsel may be excused.